## Estate of Daniel Dalrymple, Deceased. Appeal of Clara Roy.

*Will—Construction—Intention of testator.*

The primary rule of construction of all wills is to ascertain, from the whole will, the intent of a testator, and, unless it be unlawful, to follow it. All other rules are subject to this and in this respect each will stands on its own facts.

Argued Jan. 16, 1900. Appeal, No. 26, Jan. T., 1900, by Clara Roy, from decree of O. C. Bradford Co., Sept. T., 1898, No. 30, dismissing exceptions to auditor's report. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER, W. D. PORTER and MITCHELL, JJ. Affirmed. Opinion by BEAVER, J.

Exceptions to auditor's report. Before ALBRIGHT, P. J., of the 31st judicial district, specially presiding.

It appears from the record that the contention in this case arose upon the distribution of the proceeds of the sale of certain personal property on one of the farms of decedent, known as the Beckwith farm disposed of under his will. The auditor found that the sum in question amounting to $906.91 went to the trustees for the children of Charles and not to the widow.

Other facts and the operating clauses of the will are sufficiently set out in the opinion of the court below dismissing exceptions to the report of W. C. Sechrist, auditor, which opinion is as follows:

Save the matter of costs of audit, the sole question raised by the exceptions to the auditor's report is whether the will vested the title to certain stock or personal property on the place known as the Beckwith farm other than the cows, in Wisner J. Roy, trustee for the children of Charles Dalrymple; the executors converted said property; the learned auditor found its value to be $906.91 in which estimate all concerned acquiesce; it is conceded that said sum shall be awarded to the party who is entitled to said property. The provisions of the will of Daniel Dalrymple pertinent to said question are the following:

" I give, devise and bequeath to my beloved wife Emily Dal-

rymple in case she shall be living at the time of my death the sum of $5,000.00 to be received by her in full payment of all moneys received by me from her or from her father or his estate.   I also give, devise and bequeath to my said wife the use and occupation during her lifetime of the farms in the Town of Wells, Bradford County Pa., together with the use of the cows that may be on said farm, at the time of my death and upon the condition that she shall pay all taxes and make all necessary repairs upon all said premises and keep the number and value of said cows equal to what they may be at the time of my decease; the same to be received by her in lieu of a dower in my estate (Item 2).   Upon the death of my said wife, I give, devise and bequeath to my son in law, Wisner J. Roy in trust for the benefit of the children of my son Charles by his present wife Emma M. all the rest, residue and remainder of my farms in the Town of Wells, Bradford Co. Pa., together with the cows and other stock or personal property which shall be upon the farm which I term the Beckwith farm," (said farm described is in Wells) "and when the youngest of the children of my said son Charles shall arrive at the age of 21 years I give, devise and bequeath to them the said farms and personal property last above described." (Item 5)

Other devises and bequests are specified, after which he gives the residue of his estate not specifically devised or bequeathed to his daughters Clara and Cora in equal shares. (Item 7.)

By the eighth item of the first codicil it is provided that in case of deficiency of funds to pay debts, funeral expenses or specific legacies, the same shall be paid from the avails of lands in Potter county, Pa.   None of the other provisions of the codicil affect the question being considered.

The unchallenged finding of the auditor is that the personal estate of the decedent was more than sufficient to pay all his debts and cash legacies including the $5,000 bequeathed to the widow by the last will and testament of the decedent over and above the personal property on the "Beckwith farm." Also that the inventory filed by the executors in this county contained personal property amounting to $1,522.91, which was on the Beckwith farm at the time of testator's death; that in the executor's account they ask credit for $1118.39, turned

over to the widow as personal property to apply on her legacy of $5,000; that $905.91 thereof was of the above named property on the Beckwith farm (other than the cows) it being conceded that the executors should not be charged with the item of $616 for the cows for the reason that they passed to the widow under the will and are not included in the $1,118.59.

Such application of said property was objected to on behalf of Charles Dalrymple and his children, they contending that it belonged to said trustee (as above stated the amount thus in controversy is $906.91). The opposing contention was that this property did not go to the trustee but was part of the residuary estate and by its application to said legacy the same inured to the benefit of the residuary legatees.

The auditor sustained the said objection to the credit as to the $906.91. That decision is complained of by the exceptions that have been filed in behalf of the executors and Clara Roy and other legatees.

The executors and legatees other than the residuary ones can be eliminated from the discussion for the manifest reason that none of them has a possible claim to this fund. Plainly the will vested none of them with the title to these goods. The executors have funds to pay the debts and legacies without resorting to this property and they have no standing in this controversy between rival claimants.

The will declares that said property at the decease of the widow shall go to the trustee; there is no specific provision as to who is to have it during her lifetime; it is urged that the use for the widow's lifetime is carried by the residuary devise and bequest of the property and estate "not hereinbefore speifically devised and bequeathed."

Before reaching said residuary disposition the testator had declared that the trustee should have the property in question (at the decease of the widow). The testator evidently was of the mind that he had already bequeathed it, and by said expression "not hereinbefore specifically devised and bequeathed" he meant such lands and goods that he had not already mentioned, or of which no disposition had been made. It cannot be argued with plausibility, especially in view of testator's general scheme disclosed by the whole will, that he intended that his daughter during the lifetime of another should have the

use of this property on the lands of such other, the articles being rails, firewood, grain, hay, calves, pigs, pails and the like, and that at the decease of the widow they should surrender it to the trustee.

The court is of the opinion that the title of said goods is not disposed of by said residuary clause. Evidently testator did not intend to die intestate as to the temporary use of said articles. The court is of the view that if goods are bequeathed to A to be enjoyéd at the death of B, and there is no other provision respecting such goods, and they are on hand at testator's death A may take them then. The conclusion is that the trustee had the right to take and hold said goods upon the decease of the.testator.

I believe it was suggested that inasmuch as there was a conversion, said daughters ought to be awarded the interest of the funds during the widow's lifetime. But it seems to be beyond doubt that the party who was entitled to the goods must be awarded the proceeds thereof. I think it has been demonstrated that the testator indicated that the trustee and not the widow or residuary legatees should have said goods.

At the argument the executors filed an exception to the auditor's action in imposing the cost upon the estate. No merit in this exception is discernible. It concerns only the residuary legatees, not the accountants. Besides, it cannot be said that an audit was not necessary, and the parties upon whom the costs actually fall are costs in this litigation.

The auditor finds no balance and reports no distribution. There is no exception in that reference. There ought to be a final decree as to this account.

The auditor was appointed on the executor's account. The auditor's report shows nothing in the way of controversy about any item on the debit or credit side, except the credit item of $1,118.50 of personal property transferred to the widow upon her $5,000 legacy, and that was only brought into question incidentally. There was no error in paying her that sum; the use of the effects of another for that purpose only was controverted. The account shows a balance in accountant's hands of $697.40. In the absence of objection as to the correctness of that, it will be taken to be the true balance.

From what was said at the argument the court is of the belief

that the executors, trustee and residuary legatees will arrange the matter between them (that is the amount due the trustee not realized) without further litigation or contention.

If the court in its effort to make a final disposition upon the evidence before it (as to the balance) if it is believed to have fallen into error, application may be made presently to correct alleged mistake.

April 7, 1899, the exceptions to the auditor's report are dismissed and the report is confirmed; further it is adjudged that the estate of the testator is indebted to Wisner J. Roy, trustee for the children of Charles Dalrymple in the sum of $906.91; that a balance of $697.44 is found to be in accountant's hands, which is to be paid as follows : costs of audit as specified in the report $50.55; and $646.89 to Wisner J. Roy, trustee as aforesaid, on account of his said demand of $906.91.

*Errors assigned* among others were (1) in refusing to answer and sustain the second exception filed to the auditor's report which was as follows : " That the auditor erred in his findings leading up to and including his conclusion of law, ' that it was the intention of Daniel Dalrymple that Wisner J. Roy, the trustee, should hold the said property ' (being the personal property of the ' Beckwith Farm ' outside of the cows and other stock amounting to $906.91) for the children of Charles Dalrymple and to take effect as to the property at the death of the testator, and that the words used in the will ' upon the death of my said wife ' relate only to the real estate, cows and other stock of which she had the use during her life." (3) In making the following decree : " April 7, 1899, the exceptions to the auditor's report are dismissed and the report is confirmed; further it is adjudged that the estate of the testator is indebted to Wisner J. Roy, trustee for the children of Charles Dalrymple in the sum of $906.91 ; that a balance of $697.44 is found to be in accountant's hands, which is to be paid as follows : costs of audit as specified in the report $50.55; and $646.89 to Wisner J. Roy, trustee as aforesaid, on account of his said demand of $906.91."

*Albert Morgan*, with him *David J. Fanning,* for appellant.— The intention of the testator, if it can be gathered from the

will, must, of course, prevail, and to ascertain such intention the whole will should be taken together : Finlay v. King, 28 U. S. 346.

If an intention can be inferred from the wording of the will to give to the trustee any other property than the cows, certain it is, that the same was not to go into his possession until after the death of the widow.

Whatever property on the " Beckwith farm " was to pass to the children of Charles was given to them by a contingent bequest and did not vest such property in the children until the youngest child became of age.   Until that date it is uncertain who will take.   Under the terms of the will the children of Charles born of his wife Emma M. were to take part in the final disposition, and if any such children should die without issue their share go to the survivors, if any.

*H. K. Mitchell*, for appellee.—We think the only construction which "harmonizes all his dispositions and accomplishes all his intentions " is that the personal property on the " Beckwith farm " not otherwise disposed of was intended to be given to the trustee of the children of Charles Dalrymple on the death of the testator, Daniel Dalrymple.

Regard must be had to the whole scheme of the will, and if it is found that a particular intent is inconsistent with the general intent, the former must give way to the latter.   No intention of the testator to die intestate as to part of his estate can be presumed, when his words as found in his will can fairly be construed to dispose of the whole of it: Ferry's Appeal, 102 Pa. 207.

Opinion by Beaver J., April 23, 1900 :

Decedent in the second clause of his will made provision for his widow in part as follows :

" Second. I give, devise and bequeath to my beloved wife, Emily Dalrymple, in case she shall be living at the time of my death, the sum of $5,000, to be received by her in full payment of all moneys received by me from her or from her father or his estate.

" I also give, devise and bequeath to my said wife . . . . the use and occupation during her lifetime of my farms in the town

of Wells, Bradford County, Pa., together with the use of the cows that may be on said farms at the time of my death."

In the fifth clause of his will he provided as follows:

"Upon the death of my said wife I give, devise and bequeath to my son-in-law Wisner J. Roy, in trust for the benefit of the children of my said son Charles by his present wife, Emma M., all the rest, residue and remainder of my farms in the town of Wells, Bradford County, Pa., together with the cows and other stock or personal property which shall be upon the farm which I term the Beckwith farm, where Buell now resides."

The seventh clause of the will provides as follows:

"All the rest, residue and remainder of the property and estate of which I may die seized or possessed, not hereinbefore specifically devised and bequeathed, I hereby devise and bequeath to my two daughters, Clara Roy and Cora Dalrymple, share and share alike."

A considerable amount of personal property found upon the farm last mentioned was sold by the executors and the proceeds paid to the widow on account of the bequest of $5,000 contained in the first paragraph of the second clause herein quoted. It was admitted before the auditor that there were funds in the hands of the executors exclusive of the proceeds of the personal property so sold to pay the said bequest of $5,000. The sole question before the auditor, therefore, was whether or not the proceeds of the personal property other than the cows which belonged to the widow for life, should be paid to Wisner J. Roy, as trustee for the children of the testator's son Charles or whether indirectly the amount so paid to the widow should inure to the benefit of the residuary estate.

The auditor, after carefully summarizing the facts, reaches the conclusion of law that the testator intended the personal property above mentioned to go to the trustee of the children of his son Charles and that, it having been sold, the proceeds thereof should be paid to him. This finding was, after careful consideration, approved by the court below. This conclusion was reached in recognition of the general rule that the intention of the testator must govern in the construction of a will. The auditor finds that the testator "did not intend to die intestate as to any part of his estate, he having made a complete disposal of it by his will, and also that he intended the personal

property upon the Beckwith farm other than the cows to be held by the trustee in trust for the benefit of the children of his son Charles.   In these conclusions, fully discussed by the auditor and affirmed by the court in a full opinion, we concur.   It is not necessary here to repeat or enlarge upon the discussion. The reasons given by the auditor and the court below fully sustain the conclusions reached and upon them we are of the opinion that the decree of the court should be affirmed.

Decree affirmed and appeal dismissed at the costs of the appellant.